GEORGE A. BIRD *vs.* CHARLES C. KELLER and another.

Waldo. Opinion April 13, 1885.

*Mortgage. Foreclosure. Redemption. Limitations. Stat. 1849, c. 105.*

Stat. 1849, c. 105, relating to the foreclosure of mortgages, applied to mortgages in existence at the time of its enactment, and under it a foreclosure is ineffectual when there is an omission to have recorded "an abstract of the writ of possession with the time of obtaining the possession."

The right of redemption is not lost by lapse of time when the mortgagor remains in possession of the premises and occupies for himself and not for the mortgagee.

When the interest of a deceased person in real estate is that of mortgagee it passes to his administrator as assets, and his widow and heirs can convey no title except through the administrator.

ON REPORT.

Writ of entry wherein is demanded the possession of the homestead lately occupied by Thomas T. Moody, in Isleboro.

The material facts are stated in the opinion.

*Thompson and Dunton*, for the plaintiff, contended that the mortgage was legally foreclosed under the statutes in force at the time of its execution. R. S., 1841, c. 125, § 3, and that those statutes controlled. Jones, Mortgages, § § 1321, 1258; *Bronson* v. *Kinzie*, 1 How. 311.

*Joseph Williamson*, for the defendants, cited: *K. & P. R. R. Co.* v. *P. & K. R. R. Co.* 59 Maine, 40; *Hatch* v. *Bates*, 54 Maine, 136; R. S., c. 90, § 11; 1 Hill, Mort. 189; *Smith* v. *Dyer*, 16 Mass. 18; *Dewey* v. *Van Deusen*, 4 Pick. 19; *Fay* v. *Cheney*, 14 Pick. 404; *Taft* v. *Stevens*, 3 Gray, 504; *Webster* v. *Calden*, 56 Maine, 204; *Haskins* v. *Hawkes*, 108 Mass. 379; *Jarvis* v. *Albro*, 67 Maine, 313; *Cheever* v. *Perley*, 11 Allen, 587; *Derby* v. *Jones*, 27 Maine, 357.

DANFORTH, J. October 7, 1847, Stephen P. Moody and Thomas T. Moody, having title to the premises in dispute, conveyed them in mortgage to Jacob Moody. There was a breach of the condition and January 16, 1856, Jacob recovered judgment as of mortgage, upon which a writ of possession was issued March 31, 1856. Before that writ was served Jacob conveyed the premises, by deed of warranty dated May 13, 1856, to John Payne who died October 8, 1857. His widow conveyed her interest to Thomas P. Moody, May 14, 1880, and Mary Payne, the widow of Miller, a son of John and Virginia, the sole surviving heir of John, conveyed their interest to the same grantee by quit claim deed dated February 3, 1883. The plaintiff claims by deed of warranty from Thomas P. Moody.

Thus it appears that the plaintiff traces his title through mesne conveyances to the mortgage of Stephen P. and Thomas T.

Moody to Jacob Moody ; one of the links in this chain being the deeds from the widow and heir of John Payne. If this title fails he must fail in his suit. The objection to it is twofold. First, that the attempted foreclosure was not a valid or completed one and second in any event under the undisputed facts in this case the widow and heir of John Payne never had any title under the mortgage and therefore could convey none. Was the foreclosure a valid one ? There was an attempt to foreclose by the service of the writ of possession sometime in 1856, and as the law was at the date of the mortgage perhaps all the steps necessary to begin the foreclosure were taken. But some years before the commencement of the action to recover possession the act of 1849, c. 105, was passed which as an amendment to the statutes previously in force, provides that " when the foreclosure is by an action at law an abstract of the writ of possession, with the time of obtaining possession, certified by the clerk of the courts where judgment was rendered, shall be recorded within thirty days after possession is obtained, in the registry of deeds in which the mortgage is or ought to be recorded." This act was incorporated into the subsequent revision of the statutes and has been in force ever since.

This act was not complied with in this case. That it is material and its omission fatal, when applicable is settled in *Hatch* v. *Bates*, 54 Maine, 136–141. That by its terms it is applicable in this case there can be no doubt. It was in force before the attempted foreclosure, is general in its provisions and makes no exception of mortgages previously executed. It is however, claimed that as it was not in force at the date of the mortgage, if applied it is unconstitutional as impairing the obligation of a contract.

That there is a distinction between the contract and the remedy is too well settled to need discussion. That this act relates to the remedy would seem to be equally clear. It in no respect alters or modifies a single provision of the contract. In its terms it remains the same as before. It only provides for a single step in the particular process resorted to for enforcing its obligations. True there are cases where an alteration of the remedy has been held to be within the constitutional prohibition.

But that is only where the change necessarily affects the obligation of the contract, taking from it somewhat of its force and efficiency, rendering it of less value to the party who is to receive its benefits. That is not this case. No part of it is rendered any less efficient by the act; it is of no less value to the mortgagee as a security for his debt under the law than without it. It may be even more valuable, for taking the whole act, it provides that the" certificate of the register shall be received as *prima facie* evidence of entry . . and sheriff's return;" a valuable provision in case of the loss of the writ of possession as in this case. The object of the record is to give better notice of the entry and preserve the evidence of it; a provision apparently as much for the benefit of the mortgagee as the mortgagor. The principle here involved has been fully discussed in *Bronson* v. *Kinzie*, 1 Howard, 311, and *K. & P. R. R. Co.* v. *P. & K. R. R. Co.* 59 Maine, 9, leading to to the conclusion that the act in question is applicable and does not come within the constitutional prohibition.

It is, however, claimed that the right of redemption was barred by lapse of time, which, under a certain state of facts, might occur. So a lapse of time of sufficient length would raise a presumption of payment. But both these facts can not exist in relation to the same mortgage at the same time. Whether the one or the other will prevail, must depend upon the possession. If the mortgagor were in possession for twenty years after the debt became payable, the presumption of payment would follow. Perhaps the same result might follow if the mortgagee were not in possession. But if the mortgagee were in possession for the same length of time, there would be a presumption of foreclosure. From the report in this case, it appears that at the attempted service of the writ of possession, one of the mortgagors was in possession, and at that time, with perhaps some doubt and uncertainty, Payne, then the assignee of the mortgage, was put into possession. But it appears that the mortgagor was not ousted, that he did not become the tenant of Payne, or in any way agree to hold the premises for him, and that Payne, instead

of continuing in the possession as the law requires, in order to complete the foreclosure, left the mortgagor there, who continued to hold and occupy as before; taking the rents and profits without accounting for them or paying rent, or being called upon to do either, and on one occasion at least, exercising the right of an absolute owner by giving a mortgage under which the defendants claim to hold. Thus for more than twenty years after the attempted foreclosure, the premises were in the actual possession of one of the mortgagors, which would not only prevent the completion of the foreclosure, but raise the presumption of payment.

But it is claimed that the possession of the mortgagor is that of the mortgagee. If this were true without qualification, the presumption of payment could seldom, if ever, arise. While it may be true in some cases and for some purposes, it is not so for others. A mortgagor in possession is undoubtedly bound in the exercise of good faith under his contract to hold the property in accordance with that contract, and preserve the property as security for the debt, with all due subjection and regard to the rights and interests of the mortgagee. So far, his possession is the possession of the mortgagee, and no farther. When it comes to the foreclosure, it is another matter. This to be sure, is a right which accrues to the mortgagee from the mortgage, but it is a right which he may exercise or omit at his option. If he chooses to put it in force, he does so by himself, or by his authority, and in doing it, he becomes antagonistic to the mortgagor. The mortgagor has no duty to perform in this respect, and herein their relations become such that the possession of the one is not the possession of the other, but antagonistic to it. It is true that the mortgagor may assume new relations to the mortgagee; he may become his tenant, as any other person might; he may agree to hold the property under and in subordination to the control of the mortgagee. Then his possession would, in respect to the foreclosure, become the possession of the mortgagee. But this would be by virtue of a new contract; one outside of and in addition to that evidenced by the mortgage. No such contract, but the opposite, is shown by the report in this case.

It thus appearing that the attempted foreclosure of the mortgage did not accomplish its purpose, there still remains a right of redemption, unless the title has become absolute in the mortgagor by a presumption of payment. In either case, the title of the plaintiff must fail, and there is no occasion for examining the second objection to it.

If the mortgage had been paid, then Payne's heirs could derive no title to the premises. If it has not been paid, his attempted foreclosure, as we have seen, being ineffectual, it would become assets in the hands of his administrator. His estate was represented insolvent and proved to be so. As the creditors had the prior right after the widow's allowance, it was the duty of the administrator to appropriate it to the widow, or creditors, or both. The title was in him for this purpose, and the heirs or widow could convey no title. Thus the plaintiff's title, coming from the widow and heirs, failing, it is unnecessary to examine that of the defendants.

*Judgment for the defendants.*

PETERS, C. J., VIRGIN, EMERY, FOSTER and HASKELL, JJ., concurred.